RAGSDALE ET AL. *v.* WOLVERINE
WORLD WIDE, INC.

No. 00–6029.   Argued January 7, 2002—Decided March 19, 2002

82

*L. Oneal Sutter* argued the cause for petitioners. With him on the briefs was *Eric Schnapper.*

*Malcolm L. Stewart* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Deputy Solicitor General Kneedler, Howard M. Radzely, Allen H. Feldman, Nathaniel I. Spiller,* and *Ellen L. Beard.*

*Richard D. Bennett* argued the cause for respondent. With him on the brief was *James Francis Barna.* *

*Briefs of *amici curiae* urging reversal were filed for the American Federation of Labor and Congress of Industrial Organizations et al. by *Jonathan P. Hiatt, James B. Coppess, Judith L. Lichtman,* and *Laurence*

JUSTICE KENNEDY delivered the opinion of the Court.

Qualifying employees are guaranteed 12 weeks of unpaid leave each year by the Family and Medical Leave Act of 1993 (FMLA or Act), 107 Stat. 6, as amended, 29 U. S. C. § 2601 *et seq.* (1994 ed. and Supp. V). The Act encourages businesses to adopt more generous policies, and many employers have done so. Respondent Wolverine World Wide, Inc., for example, granted petitioner Tracy Ragsdale 30 weeks of leave when cancer kept her out of work in 1996. Ragsdale nevertheless brought suit under the FMLA. She alleged that because Wolverine was in technical violation of certain Labor Department regulations, she was entitled to more leave.

One of these regulations, 29 CFR § 825.700(a) (2001), did support Ragsdale's claim. It required the company to grant her 12 more weeks of leave because it had not informed her that the 30-week absence would count against her FMLA entitlement. We hold that the regulation is contrary to the Act and beyond the Secretary of Labor's authority. Ragsdale was entitled to no more leave, and Wolverine was entitled to summary judgment.

## I

Ragsdale began working at a Wolverine factory in 1995, but in the following year she was diagnosed with Hodgkin's disease. Her prescribed treatment involved surgery and months of radiation therapy. Though unable to work during this time, she was eligible for seven months of unpaid sick leave under Wolverine's leave plan. Ragsdale requested

*Gold;* and for the National Employment Lawyers Association et al. by *Ronald B. Schwartz* and *Paula A. Brantner.*

*Ann Elizabeth Reesman, Daniel V. Yager, Stephen A. Bokat, Robin S. Conrad,* and *Heather L. MacDougall* filed a brief for the Equal Employment Advisory Council et al. as *amici curiae* urging affirmance.

*Jack Whitacre* filed a brief for Human Resource Management as *amicus curiae.*

and received a 1-month leave of absence on February 21, 1996, and asked for a 30-day extension at the end of each of the seven months that followed. Wolverine granted the first six requests, and Ragsdale missed 30 consecutive weeks of work. Her position with the company was held open throughout, and Wolverine maintained her health benefits and paid her premiums during the first six months of her absence. Wolverine did not notify her, however, that 12 weeks of the absence would count as her FMLA leave.

In September, Ragsdale sought a seventh 30-day extension, but Wolverine advised her that she had exhausted her seven months under the company plan. Her condition persisted, so she requested more leave or permission to work on a part-time basis. Wolverine refused and terminated her when she did not come back to work.

Ragsdale filed suit in the United States District Court for the Eastern District of Arkansas. Her claim relied on the Secretary's regulation, which provides that if an employee takes medical leave "and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." 29 CFR § 825.700(a) (2001). The required designation had not been made, so Ragsdale argued that her 30 weeks of leave did "not count against [her] FMLA entitlement." *Ibid.* It followed that when she was denied additional leave and terminated after 30 weeks, the statute guaranteed her 12 more weeks. She sought reinstatement, backpay, and other relief.

When the parties filed cross-motions for summary judgment, Wolverine conceded it had not given Ragsdale specific notice that part of her absence would count as FMLA leave. It maintained, however, that it had complied with the statute by granting her 30 weeks of leave—more than twice what the Act required. The District Court granted summary judgment to Wolverine. In the court's view the regulation was in conflict with the statute and invalid because, in effect, it required Wolverine to grant Ragsdale more than

12 weeks of FMLA-compliant leave in one year. The Court of Appeals for the Eighth Circuit agreed. 218 F. 3d 933 (2000).

We granted certiorari, 533 U. S. 928 (2001), and now affirm.

## II

Wolverine's challenge concentrates on the validity of a single sentence in § 825.700(a). This provision is but a small part of the administrative structure the Secretary devised pursuant to Congress' directive to issue regulations "necessary to carry out" the Act. 29 U. S. C. § 2654 (1994 ed.). The Secretary's judgment that a particular regulation fits within this statutory constraint must be given considerable weight. See *United States* v. *O'Hagan,* 521 U. S. 642, 673 (1997) (citing *Batterton* v. *Francis,* 432 U. S. 416, 424–426 (1977)). Our deference to the Secretary, however, has important limits: A regulation cannot stand if it is "'arbitrary, capricious, or manifestly contrary to the statute.'" *United States* v. *O'Hagan, supra,* at 673 (quoting *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 844 (1984)). To determine whether § 825.700(a) is a valid exercise of the Secretary's authority, we must consult the Act, viewing it as a "symmetrical and coherent regulatory scheme." *Gustafson* v. *Alloyd Co.,* 513 U. S. 561, 569 (1995).

The FMLA's central provision guarantees eligible employees 12 weeks of leave in a 1-year period following certain events: a disabling health problem; a family member's serious illness; or the arrival of a new son or daughter. 29 U. S. C. § 2612(a)(1). During the mandatory 12 weeks, the employer must maintain the employee's group health coverage. § 2614(c)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. § 2612(b)(1). Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. § 2614(a)(1). The Act makes it un-

lawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615(a)(1), and violators are subject to consequential damages and appropriate equitable relief, § 2617(a)(1).

A number of employers have adopted policies with terms far more generous than the statute requires. Congress encouraged as much, mandating in the Act's penultimate provision that "[n]othing in this Act . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act." § 2653. Some employers, like Wolverine, allow more than the 12-week annual minimum; others offer paid leave. U. S. Dept. of Labor, D. Cantor et al., Balancing the Needs of Families and Employers: Family and Medical Leave Surveys 5–10, 5–12 (2001) (22.9% of FMLA-covered establishments allow more than 12 weeks of leave per year; 62.7% provide paid disability leave). As long as these policies meet the Act's minimum requirements, leave taken may be counted toward the 12 weeks guaranteed by the FMLA. See 60 Fed. Reg. 2230 (1995) ("[E]mployers may designate paid leave as FMLA leave and offset the maximum entitlements under the employer's more generous policies").

With this statutory structure in place, the Secretary issued regulations requiring employers to inform their workers about the relationship between the FMLA and leave granted under company plans. The regulations make it the employer's responsibility to tell the employee that an absence will be considered FMLA leave. 29 CFR § 825.208(a) (2001). Employers must give written notice of the designation, along with detailed information concerning the employee's rights and responsibilities under the Act, "within a reasonable time after notice of the need for leave is given by the employee—within one or two business days if feasible." § 825.301(c).

The regulations are in addition to a notice provision explicitly set out in the statute. Section 2619(a) requires employers to "keep posted, in conspicuous places . . . , a notice . . . setting forth excerpts from, or summaries of, the pertinent provisions of this subchapter and information pertaining to the filing of a charge." According to the Secretary, the more comprehensive and individualized notice required by the regulations is necessary to ensure that employees are aware of their rights when they take leave. See 60 Fed. Reg. 2220 (1995). We need not decide today whether this conclusion accords with the text and structure of the FMLA, or whether Congress has instead "spoken to the precise question" of notice, *Chevron, supra,* at 842, and so foreclosed the notice regulations. Even assuming the additional notice requirement is valid, the categorical penalty the Secretary imposes for its breach is contrary to the Act's remedial design.

The penalty is set out in a separate regulation, § 825.700, which is entitled "What if an employer provides more generous benefits than required by the FMLA?" This is the sentence on which Ragsdale relies:

> "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." 29 CFR § 825.700(a) (2001).

This provision punishes an employer's failure to provide timely notice of the FMLA designation by denying it any credit for leave granted before the notice. The penalty is unconnected to any prejudice the employee might have suffered from the employer's lapse. If the employee takes an undesignated absence of 12 weeks or more, the regulation always gives him or her the right to 12 more weeks of leave that year. The fact that the employee would have acted in the same manner if notice had been given is, in the Secretary's view, irrelevant. Indeed, as we understand the Sec-

retary's position, the employer would be required to grant the added 12 weeks even if the employee had full knowledge of the FMLA and expected the absence to count against the 12-week entitlement. An employer who denies the employee this additional leave will be deemed to have violated the employee's rights under § 2615 and so will be liable for damages and equitable relief under § 2617.

The categorical penalty is incompatible with the FMLA's comprehensive remedial mechanism. To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered. Cf. *EEOC* v. *Waffle House, Inc.*, 534 U. S. 279, 292–293 (2002) (provisions in Title VII stating that plaintiffs "may recover" damages and "appropriate" equitable relief "refer to the trial judge's discretion in a particular case to order reinstatement and award damages in an amount warranted by the facts of that case").

Section 825.700(a), Ragsdale contends, reflects the Secretary's understanding that an employer's failure to comply with the designation requirement might sometimes burden an employee's exercise of basic FMLA rights in violation of § 2615. Consider, for instance, the right under § 2612(b)(1) to take intermittent leave when medically necessary. An employee who undergoes cancer treatments every other week over the course of 12 weeks might want to work during the off weeks, earning a paycheck and saving six weeks for later. If she is not informed that her absence qualifies

as FMLA leave—and if she does not know of her right under
the statute to take intermittent leave—she might take all
12 of her FMLA-guaranteed weeks consecutively and have
no leave remaining for some future emergency. In circum-
stances like these, Ragsdale argues, the employer's failure
to give the notice required by the regulation could be said
to "deny," "restrain," or "interfere with" the employee's
exercise of her right to take intermittent leave.

This position may be reasonable, but the more extreme
one embodied in §825.700(a) is not. The penalty provision
does not say that in certain situations an employer's failure
to make the designation will violate §2615 and entitle the
employee to additional leave. Rather, the regulation estab-
lishes an irrebuttable presumption that the employee's ex-
ercise of FMLA rights was impaired—and that the employee
deserves 12 more weeks. There is no empirical or logical
basis for this presumption, as the facts of this case well
demonstrate. Ragsdale has not shown that she would have
taken less leave or intermittent leave if she had received
the required notice. As the Court of Appeals noted—and
Ragsdale did not dispute in her petition for certiorari—
"Ragsdale's medical condition rendered her unable to work
for substantially longer than the FMLA twelve-week pe-
riod." 218 F. 3d, at 940. In fact her physician did not clear
her to work until December, long after her 30-week leave
period had ended. Even if Wolverine had complied with the
notice regulations, Ragsdale still would have taken the en-
tire 30-week absence. Blind to this reality, the Secretary's
provision required the company to grant Ragsdale 12 more
weeks of leave—and rendered it liable under §2617 when it
denied her request and terminated her.

The challenged regulation is invalid because it alters the
FMLA's cause of action in a fundamental way: It relieves
employees of the burden of proving any real impairment of
their rights and resulting prejudice. In the case at hand,
the regulation permitted Ragsdale to bring suit under §2617,

despite her inability to show that Wolverine's actions restrained her exercise of FMLA rights. Section 825.700(a) transformed the company's failure to give notice—along with its refusal to grant her more than 30 weeks of leave—into an actionable violation of §2615. This regulatory sleight of hand also entitled Ragsdale to reinstatement and backpay, even though reinstatement could not be said to be "appropriate" in these circumstances and Ragsdale lost no compensation "by reason of" Wolverine's failure to designate her absence as FMLA leave. By mandating these results absent a showing of consequential harm, the regulation worked an end run around important limitations of the statute's remedial scheme.

In defense of the regulation, the Government notes that a categorical penalty requiring the employer to grant more leave is easier to administer than one involving a fact-specific inquiry into what steps the employee would have taken had the employer given the required notice. "Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 125 (2000) (quoting *ETSI Pipeline Project* v. *Missouri*, 484 U. S. 495, 517 (1988)). By its nature, the remedy created by Congress requires the retrospective, case-by-case examination the Secretary now seeks to eliminate. The purpose of the cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions. To determine whether damages and equitable relief are appropriate under the FMLA, the judge or jury must ask what steps the employee would have taken had circumstances been different—considering, for example, when the employee would have returned to work after taking leave. Though the Secretary could not

enact rules purporting to make these kinds of determinations for the courts, §825.700(a) has this precise effect.

For this reason, the Government's reliance upon *Mourning* v. *Family Publications Service, Inc.*, 411 U. S. 356 (1973), is misplaced. Just as the FMLA does not itself require employers to give individualized notice, see *supra*, at 88, the Truth in Lending Act did not itself require lenders to make certain disclosures mandated by the regulation at issue in *Mourning*. In sustaining the regulation, we observed that the disclosure requirement was not contrary to the statute and that the Federal Reserve Board's rulemaking authority was much broader than the Secretary's is here. See 411 U. S., at 361–362 (quoting 15 U. S. C. §1604 (1970 ed.) (empowering the Board to issue regulations not only necessary "to carry out the purposes of [the statute]," but also "necessary or proper . . . to prevent circumvention or evasion [of the statute], or to facilitate compliance therewith")). The crucial distinction, however, is that although we referred to the Board's regulation as a "remedial measure," 411 U. S., at 371, the disclosure requirement was in fact enforced through the statute's pre-existing remedial scheme and in a manner consistent with it. The Board simply assessed violators the $100 minimum statutory fine applicable to lenders who failed to make required disclosures. See *id.*, at 376. In contrast, §825.700(a) enforces the individualized notice requirement in a way that contradicts and undermines the FMLA's pre-existing remedial scheme. While §2617 says that employees must prove impairment of their statutory rights and resulting harm, the Secretary's regulation instructs the courts to ignore this command. Our previous decisions, *Mourning* included, do not authorize agencies to contravene Congress' will in this manner.

Furthermore, even if the Secretary were authorized to reconfigure the FMLA's cause of action for her administrative convenience, this particular rule would be an unreasonable choice. As we have noted in other contexts, categorical

rules—such as the rule of *per se* antitrust illegality—reflect broad generalizations holding true in so many cases that inquiry into whether they apply to the case at hand would be needless and wasteful. *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36, 50, n. 16 (1977); *Eastman Kodak Co.* v. *Image Technical Services, Inc.*, 504 U. S. 451, 486–487 (1992) (SCALIA, J., dissenting). When the generalizations fail to hold in the run of cases—when, for example, a particular restraint of trade does not usually present a pronounced risk of injury to competition—the justification for the categorical rule disappears. See, *e. g., State Oil Co.* v. *Khan*, 522 U. S. 3, 8–22 (1997) (rejecting *per se* ban on vertical maximum price fixing). That said, the generalization made by the Secretary's categorical penalty—that the proper redress for an employer's violation of the notice regulations is a full 12 more weeks of leave—holds true in but few cases. The employee who would have taken the absence anyway, of course, would need no more leave; but the regulation provides 12 additional weeks. Even the employee who would have chosen to work on an intermittent basis—say, every other week, see *supra*, at 89–90—could claim an entitlement not to 12 weeks of leave but instead to the 6 weeks he or she would not have taken. To be sure, 12 more weeks might be an appropriate make-whole remedy for an employee who would not have taken any leave at all if the notice had been given. It is not a "fair assumption," *United States* v. *O'Hagan*, 521 U. S., at 676, however, that this fact pattern will occur in any but the most exceptional of cases.

To the extent the Secretary's penalty will have no substantial relation to the harm suffered by the employee in the run of cases, it also amends the FMLA's most fundamental substantive guarantee—the employee's entitlement to "a total of 12 workweeks of leave during any 12-month period." § 2612(a)(1). Like any key term in an important piece of legislation, the 12-week figure was the result of compromise between groups with marked but divergent inter-

ests in the contested provision. Employers wanted fewer weeks; employees wanted more. See H. R. Rep. No. 102–135, pt. 1, p. 37 (1991). Congress resolved the conflict by choosing a middle ground, a period considered long enough to serve "the needs of families" but not so long that it would upset "the legitimate interests of employers." § 2601(b).

Courts and agencies must respect and give effect to these sorts of compromises. *Mohasco Corp.* v. *Silver,* 447 U. S. 807, 818–819 (1980). The Secretary's chosen penalty subverts the careful balance, for it gives certain employees a right to more than 12 weeks of FMLA-compliant leave in a given 1-year period. This is so in part because the employee will often enjoy every right guaranteed by the FMLA during part or all of an undesignated absence. Under the Secretary's regulations, moreover, employers must comply with the FMLA's minimum requirements during these undesignated periods. See, *e. g.,* 29 CFR § 825.208(c) (2001) (an employee on paid leave "is subject to the full protections of the Act" during "the absence preceding the notice to the employee of the [FMLA] designation"). Here, the Secretary required Wolverine to maintain Ragsdale's health benefits for at least 12 weeks of her 30-week absence; if it had not, Ragsdale could have sued. The penalty provision, in turn, required the company to grant Ragsdale 12 more weeks after the 30 weeks had passed. Section 2654 merely authorizes the Secretary to issue rules "necessary to carry out" the Act, but these regulations extended Wolverine's liability far beyond the 12-week total guaranteed by the statute. It is no answer to say, as the Government does, that the Secretary's provision is consistent with the Act because employers must provide more than 12 weeks of leave only when they do not comply with the individualized notice requirement. If this argument carried the day, a penalty of 24 weeks—or 36, or 48—would also be permissible. Just as those provisions would be contrary to the FMLA's 12-week mandate, so is § 825.700(a).

That the Secretary's penalty is disproportionate and inconsistent with Congress' intent is evident as well from the sole notice provision in the Act itself. As noted above, §2619 directs employers to post a general notice informing employees of their FMLA rights. See *supra*, at 88. This provision sets out its own penalty for noncompliance: "Any employer that willfully violates this section may be assessed a civil monetary penalty not to exceed $100 for each separate offense." §2619(b). Congress believed that a $100 fine, enforced by the Secretary, was the appropriate penalty for willful violations of the only notice requirement specified in the statute. The regulation, in contrast, establishes a much heavier sanction, enforced not by the Secretary but by employees, for both willful and inadvertent violations of a supplemental notice requirement.

Section 825.700(a) is also in considerable tension with the statute's admonition that "[n]othing in this Act . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act." §2653. The FMLA was intended to pull certain employers up to the minimum standard, but Congress was well aware of the danger that it might push more generous employers down to the minimum at the same time. Technical rules and burdensome administrative requirements, Congress knew, might impose unforeseen liabilities and discourage employers from adopting policies that varied much from the basic federal requirements.

Although §825.700(a) itself is directed toward employers "provid[ing] more generous benefits than required by the FMLA," its severe and across-the-board penalty could cause employers to discontinue these voluntary programs. Compliance with the designation requirement is easy enough for companies meeting only the minimum federal requirements: All leave is given the FMLA designation. Matters are quite different for companies like Wolverine, which offer more

diverse and expansive options to their employees. In addition to allowing more than 12 weeks of leave per year, these employers might also provide leave for non-FMLA reasons, or to employees who are not yet FMLA eligible—leave the Secretary may not permit to be designated as FMLA leave. See, e. g., 60 Fed. Reg. 2230 (1995) ("Leave granted under circumstances that do not meet . . . specified reasons for FMLA-qualifying leave may *not* be counted against [the] FMLA's 12-week entitlement"). Those employers must decide, almost as soon as leave is requested, whether to designate the absence as FMLA leave. The answer might not always be obvious, and this decision may require substantial investigation. The regulation imposes a high price for a good-faith but erroneous characterization of an absence as non-FMLA leave, and employers like Wolverine might well conclude that the simpler, less generous route is the preferable one.

These considerations persuade us that § 825.700(a) effects an impermissible alteration of the statutory framework and cannot be within the Secretary's power to issue regulations "necessary to carry out" the Act under § 2654. In so holding we do not decide whether the notice and designation requirements are themselves valid or whether other means of enforcing them might be consistent with the statute. Whatever the bounds of the Secretary's discretion on this matter, they were exceeded here. The FMLA guaranteed Ragsdale 12—not 42—weeks of leave in 1996.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE O'CONNOR, with whom JUSTICE SOUTER, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

The Court today holds that the Family and Medical Leave Act of 1993 (FMLA or Act), 29 U. S. C. § 2601 *et seq.* (1994 ed. and Supp. V), clearly precludes the Secretary of Labor from adopting a rule requiring an employer to give an em-

ployee notice that leave is FMLA qualifying before the leave may be counted against the employer's 12-week obligation. Because I believe the Secretary is justified in requiring such individualized notice and because I think that nothing in the Act constrains the Secretary's ability to secure compliance with that requirement by refusing to count the leave against the employer's statutory obligation, I respectfully dissent.

I

I begin with the question the Court set aside, see *ante*, at 88, whether the Secretary was justified in requiring individualized notice at all. The FMLA gives the Secretary the notice and comment rulemaking authority to "prescribe such regulations as are necessary to carry out" the Act. 29 U. S. C. § 2654 (1994 ed.). In light of this explicit congressional delegation of rulemaking authority, we must uphold the Secretary's regulations unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 844 (1984).

The Secretary has reasonably determined that individualized notice is necessary to implement the FMLA's provisions. According to the Secretary, to fulfill the FMLA's purposes, employees need to be aware of their rights and responsibilities under the Act. See 60 Fed. Reg. 2220 (1995) ("The intent of this notice requirement is to insure employees receive the information necessary to enable them to take FMLA leave"). Although the Act requires that each employer post a general notice of FMLA rights, 29 U. S. C. § 2619(a), the provision of individualized notice provides additional assurance that employees taking leave are aware of their rights under the Act. Individualized notice reminds employees of the existence of the Act and its protections at the very moment they become relevant. See also 29 CFR § 825.301(b)(1) (2001) (notice must also include information about various FMLA rights and obligations).

Perhaps more importantly, individualized notice indicates to employees that the Act applies to them specifically. To trigger employers' FMLA obligations, employees need not explicitly assert their rights under the Act; they must only inform their employers of their reasons for seeking leave. See § 825.208(a)(2). They may not be aware that their leave is protected under the FMLA. For many employees, the individualized notice required by the Secretary may therefore be their first opportunity to learn that their leave is in fact protected by the FMLA. This not only assists employees in enforcing their entitlement to 12 weeks of leave, but also helps them take advantage of their other rights under the Act (such as their right to take intermittent leave, 29 U. S. C. § 2612(b)(1), or to substitute accrued paid leave, § 2612(b)(2)), and facilitates their enforcement of the employer's other obligations (such as the obligation to continue health insurance coverage during FMLA leave, § 2614(c)(1), and the obligation to restore the employee to a position upon return from leave, § 2614(a)).

Individualized notice also informs employees whether the employer plans to provide FMLA and employer-sponsored leave consecutively or concurrently. This can facilitate leave planning, allowing employees to organize their health treatments or family obligations around the total amount of leave they will ultimately be provided.

Given these reasons, the Secretary's decision to require individualized notice is not arbitrary and capricious. Respondent does not disagree, instead arguing that, whether or not these reasons are valid, requiring individualized notice is contrary to the Act. Because the Act explicitly requires other sorts of notice, such as the requirement that the employer post a general notice, § 2619(a), and requirements that an employee notify the employer of the need for or reasons for FMLA leave, §§ 2612(e)(1), 2613, respondent argues that Congress intended that the Secretary not enact any other notice requirements.

The Act, however, provides no indication that its notice provisions are intended to be exclusive. Nor does it make sense for them to be so. Different notice requirements serve different functions. The requirement that employees notify their employers of their reasons for leave, for instance, informs employers that their obligations have been triggered and allows them to use the certification mechanisms provided in the Act. §2613. The requirement that employees give advance notice when leave is foreseeable, §2612(e)(1), facilitates employer planning. That the Act provides for notice to further these objectives indicates nothing about whether the Secretary may permissibly use the same tool to further different ends.

Even the provision that may seem most similar, the general notice requirement, §2619(a), serves a significantly different purpose than the Secretary's requirement. Although both inform employees of their rights under the Act, the general notice requirement is particularly useful to employees who might otherwise never approach their employer with a leave request, while the individualized notice requirement is targeted at employees after they have informed the employer of their request for leave. Moreover, even if the purposes of both sorts of notice were identical, it is not at all clear that, by providing for one sort of notice to further these objectives, Congress intended to preclude the Secretary from bolstering this purpose with an additional notice requirement. I therefore conclude that nothing in the Act precludes the Secretary from accomplishing her goals through a requirement of individualized notice.

II

Also at issue before the Court is whether the Secretary may secure compliance with the individualized notice requirement by providing that leave will not count against the employer's 12-week obligation unless the employer fulfills this requirement. The Court concludes that this means

of securing compliance is inconsistent with the cause of action the Act provides when employers "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U. S. C. § 2615. The Court appears to see two different kinds of conflict. At times, the Court seems to suggest that, insofar as the purpose of the individualized notice requirement is to enable the employee to enforce the Act's specific protections (such as the right to be reinstated at the end of the leave period), the Act restricts employees to bringing § 2615 actions to redress violations of these protections and not the notice requirement itself. See *ante*, at 91 (The Secretary's penalty provision "transformed the company's failure to give notice . . . into an actionable violation of § 2615"). Under that section, employees bear the burden of proving the violation, and their recovery is limited to whatever damages they can show they have suffered because of the employer's violation. § 2617 (1994 ed. and Supp. V).

If this is in fact the Court's view, it would effectively eviscerate the individualized notice requirement. Under such a scheme, an employer could feel no obligation to provide individualized notice, only an obligation to refrain from otherwise violating the Act's other provisions. This would seriously impede the Secretary's goals. While the fear of litigation under § 2615 might go some way toward deterring employers from, for instance, failing to reinstate employees who have taken leave or discontinuing their health insurance while they are on leave, it would do so less effectively than if employees were explicitly informed that their leave was FMLA qualifying at the moment it was taken. More importantly, the potential for § 2615 liability would do nothing to further some of the Secretary's other goals, such as making employees aware that the range of options provided by the FMLA is available to them. Without individualized notice, for instance, employees may not be made aware that they have the option of requesting intermittent

leave, § 2612(b)(1), or the option of asking the employer to substitute accrued paid vacation or sick leave for unpaid FMLA leave, § 2612(b)(2). An employer may only be liable under § 2615 for denying these options if the employee knows enough to request them. A rule that would restrict FMLA remedies to violations of § 2615 based on denials of other statutorily protected rights would thus be equivalent to denying the Secretary the power to enforce an individualized notice requirement at all. Because I believe the individualized notice requirement is justified, and because the Secretary's power to create such a requirement must also include a power to enforce it in some way, this extreme view of the Act's remedial scheme should be rejected.

At other times, however, the Court suggests a less extreme view—that the Secretary may be allowed to require individualized notice, but that the remedy for failing to give such notice must also lie under § 2615, requiring the employee to prove harm from the employer's failure to notify. See *ante*, at 91 (suggesting that the appropriate rule is one "involving a fact-specific inquiry into what steps the employee would have taken had the employer given the required notice"). This was the approach adopted by the Court of Appeals, allowing recovery when an "employer's failure to give notice . . . interfere[s] with or [denies] an employee's substantive FMLA rights." 218 F. 3d 933, 939 (CA8 2000).

But there is no reason to restrict the Secretary's remedy to § 2615 actions. The Secretary is charged with adopting regulations that are "necessary to carry out" the Act. § 2654. This includes the power to craft appropriate remedies for regulatory violations. In *Mourning* v. *Family Publications Service, Inc.*, 411 U. S. 356 (1973), where the Federal Reserve Board was empowered to "prescribe regulations to carry out the purposes of" the Truth in Lending Act, 15 U. S. C. § 1604, this Court deferred to its choice of remedies, asserting that "[w]e have consistently held

that where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority." 411 U. S., at 371–372.

Just as the fact that the Act provides for certain sorts of notice does not preclude the Secretary from providing for other sorts, the fact that the Act provides for certain remedies does not tie the hands of the Secretary to provide for others. The Court's argument to the contrary seems to be based on something like the maxim *expressio unius est exclusio alterius*—that Congress' decision to provide for one remedy indicates that it did not intend for the Secretary to have authority to create any others. Because of the deference given to agencies on matters about which the statutes they administer are silent, *Chevron,* 467 U. S., at 843, however, *expressio unius* ought to have somewhat reduced force in this context. See *Texas Rural Legal Aid, Inc.* v. *Legal Servs. Corp.,* 940 F. 2d 685, 694 (CADC 1991). For example, in *Mourning,* this Court deferred to the agency's decision to impose a set fine on lenders who violated a regulation, rejecting the argument that, because the Truth in Lending Act provided for one sort of remedy, the agency lacked authority to impose any other sort of penalty. Although the penalty was set in an amount equal to the minimum fine set forth in the statute, it clearly went beyond the statute's remedial scheme, which required that damages be set in an amount related to the lender's finance charge. Cf. *ante,* at 92. In so holding, we stated:

> "[T]he objective sought in delegating rulemaking authority to an agency is to relieve Congress of the impossible burden of drafting a code explicitly covering every conceivable future problem. Congress cannot then be required to tailor civil penalty provisions so as to deal precisely with each step which the agency thereafter finds necessary." 411 U. S., at 376.

Moreover, the Act itself provides some remedies that fall outside the framework of 29 U. S. C. § 2615—for instance, the fine for failure to post a general notice of FMLA rights, § 2619(b). This confirms that § 2615 is not intended to be the exclusive remedy for violations of the Act or its implementing regulations. Respondent conceded at oral argument that the Secretary could secure compliance with the individual notice requirement through establishment of a fine, a remedy that goes beyond § 2615. Tr. of Oral Arg. 28. If the Secretary may enforce her regulations with a fine, what in the Act precludes her from enforcing them as appropriate through a range of remedies, such as treble damages, cease and desist orders punishable by contempt, or, in this case, additional leave?

The Court further claims that, even if the Secretary has the power to craft her own remedy for violation of the regulation, the particular remedy she has chosen is unreasonable. See *ante*, at 92–93. The Court does not take issue with the reasonableness of a categorical remedy, one that is not necessarily tailored to the individual loss of each litigant. See *Mourning, supra,* at 377 (approving of such "prophylactic" rules). The Court's argument is instead based on its assertion that the categorical remedy the Secretary has chosen is too harsh. In the Court's judgment, 12 weeks of additional leave is too great a punishment because few employees will have actually suffered this much harm from the employer's failure to give individualized notice. See *ante*, at 93.

We are bound, however, to defer to the Secretary's judgment of the likely harms of lack of notice so long as it is reasonable. I believe that it is. The Secretary has determined that a variety of purposes will be served through individualized notice, including facilitating employee planning, and enabling enforcement of the Act's protections and use of its various options by making employees aware that their leave is FMLA qualifying at the moment they take it. For those employees who ultimately bring suit for denial

of notice, it is difficult to quantify their damages retrospectively—it requires knowing not only what options an employee would have been likely to take had notice been given, but also the extent to which that employee's ability to plan leave was compromised. Moreover, an employer's failure to give individualized notice may itself cause some employees (unaware that their leave is FMLA qualifying) not to bring suit at all. I therefore see no reason to doubt the Secretary's judgment that 12 additional weeks of leave is an appropriate penalty for failing to provide individualized notice.

The Court further suggests that the Secretary's remedy is contrary to the statute in two other ways. First, it claims that the penalty would exceed the FMLA's guarantee of 12 weeks of leave under §§ 2612(a)(1) and (d)(1). See *ante*, at 93–94. But nothing requires an employer to provide more than 12 weeks of leave—an employer may avoid this penalty by following the regulation. The penalty the Secretary has chosen no more extends an employer's obligations under the Act than would any fine or other remedy for a violation of those obligations. Nor, as the Court notes, would a longer penalty violate this aspect of the Act. See *ante*, at 94. To the extent that an even lengthier penalty would be inappropriate, it would be because it is unreasonable, not because it is contrary to the Act's 12-week allotment.

Moreover, providing this notice is not at all onerous. In most situations, notice will require nothing more than informing the employee of what the employer already knows: that the leave is FMLA qualifying. The employer will eventually have to make this designation to comply with the Act's recordkeeping requirements. 29 U. S. C. § 2616(b). At most, the regulation moves up the time of this designation. When an employer is unsure at the time the leave begins whether it qualifies, the regulations allow an interim designation followed by later confirmation. 29 CFR

§ 825.208(e)(2) (2001). This is hardly the "high price" of which the Court complains. See *ante*, at 96.

Second, the Court claims that the penalty would discourage employers from voluntarily providing more leave than the FMLA requires, contrary to the Act's assertion that "[n]othing in this Act . . . shall be construed to discourage employers from adopting or retaining [more generous] leave policies," § 2653. See *ante*, at 95. This section sets out a general interpretive principle, however, and should not be construed as removing from the Secretary the power to craft any regulation that might have even a small discouraging effect, no matter how otherwise important. Moreover, because of the ease with which an employer may meet its obligation to provide individualized notice, this effect will be minimal.

For these reasons, I would reverse the judgment of the Court of Appeals and remand the case for appropriate proceedings.