# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1253

———————

Jason Scott Hearst,                          *
                                             *
        Appellant,                          *
                                             *
                                             *    Appeal from the United States
    v.                                       *    District Court for the
                                             *    Eastern District of Arkansas.
Progressive Foam Technologies, Inc.;         *
Bill Larman,                                 *
                                             *
        Appellees.                          *

———————

Submitted: January 11, 2011
Filed: June 8, 2011

———————

Before WOLLMAN, LOKEN, and SMITH, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

On May 1, 2007, Progressive Foam Technologies (PFT) fired Jason Hearst for job abandonment. Hearst—who had been on a medical leave of absence from PFT for nearly four months—filed this lawsuit against PFT and its Human Resources Director, Bill Larman (hereinafter, collectively, PFT), alleging violations of the Family and Medical Leave Act (FMLA), see 29 U.S.C. § 2612(a)(1), and the benefits-termination notice provisions of the Consolidated Omnibus Budget Reconciliation Act (COBRA),

see 29 U.S.C. § 1166(a)(4)(A).  Hearst appeals from the district court's[1] grant of summary judgment to PFT on each of his claims.  We affirm.

I.

From March 15, 2006, until May 1, 2007, Hearst was an employee of PFT.  In December 2006, Hearst was injured in a non-work-related motor-vehicle accident. The accident left Hearst in considerable pain, for which he sought treatment in early January 2007.  He also requested, and was granted, a leave of absence from PFT scheduled to begin on January 3, 2007, and end on February 5, 2007.  A memorandum from PFT to Hearst dated January 3, 2007, informed Hearst that he was "eligible for leave under the FMLA" and that the "requested leave [would] be counted against [Hearst's] annual FMLA leave entitlement."  Appellant's App. at 87.

Hearst's recovery lasted far longer than anticipated.  Hearst's physician initially recommended that he not return to work for three weeks, id. at 60, but when his condition had not improved by mid-January, recommended that he not return for an additional four weeks, id. at 66.  Then, in a letter dated February 21, 2007, another of Hearst's physicians informed PFT that Hearst had undergone two surgical procedures on February 6, 2007, and that he would be unable to return to work until April 10, 2007, "to allow for proper healing."  Id. at 67.  An undated letter followed, which read in part:  "Mr. Hearst is released to return to work on April 10, 2007.  NO EXEPTIONS!! [sic]."  Id. at 71.

On March 16, 2007, PFT sent a letter to Hearst informing him "that as of 3/28/07 [his] 12 weeks of leave under the federal Family and Medical Leave Act will be exhausted."  Id. at 72.  It went on:

---

[1]The Honorable Billy Roy Wilson, formerly William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

In accordance with our FMLA policy and as is permitted by FMLA regulations, we require all employees on leave to provide notice of their intent to return to work. We have received a notice from your physician that you would not be able to return to work till 4/10/07. Progressive Foam Technologies is extending your leave an additional 30 days after the end of your FMLA. If we do not hear from you regarding a specific return to work date, we are assuming you will not be returning to work in the foreseeable future.

Id.

On March 29, 2007, Hearst's physician sent PFT another letter, advising that Hearst had undergone another surgery and again revising Hearst's return-to-work date, this time to April 23, 2007. Id. at 76. He also noted that Hearst would be evaluated again on April 9, 2007, at which point a final determination would be made regarding his ability to return to work. Following that reevaluation, Hearst's physician once more revised his return-to-work date, to May 1, 2007.

When Hearst failed to report to work on May 1, 2007, PFT fired him for "job abandonment" and terminated his benefits. Id. at 78. The termination letter recited that the March 16, 2007, extension to Hearst's leave of absence had been exhausted and that Hearst had "not made contact with Progressive Foam Technologies to inform [it] of [his] status to return to work." Id. Still, on May 15, 2007, Hearst's physician sent a fax to PFT advising that Hearst could not return to work for two additional months. Id. at 80. In late June 2007, Hearst's physician concluded there was nothing more he could do for Hearst, noting: "I will be dismissing myself from his care as I realistically have nothing else to offer at this point." Id. at 159. He did, however, provide Hearst with a letter proscribing any return to work for another three months. Id. at 160.

Hearst sued PFT, alleging that PFT (1) interfered with his right to twelve weeks of FMLA leave when it fired him on May 1, 2007, less than seven weeks after he first

became eligible for that leave and (2) retaliated against him for his use of FMLA leave.  He also claimed that PFT failed to provide him with notice of the termination of his benefits as required by COBRA.  The district court, concluding that there was no genuine dispute of any material fact, granted summary judgment to PFT on each claim.

With respect to Hearst's interference claim, the district court concluded that Hearst had exhausted his twelve-week FMLA-leave entitlement on March 28, 2007, twelve weeks from the beginning of his leave on January 3, 2007.  To arrive at that date, the district court counted all of Hearst's leave as FMLA leave, including the leave taken prior to Hearst's one-year anniversary date of March 15, 2007.  In the district court's view, Hearst first became eligible for FMLA leave on March 15, 2007, at which point PFT was permitted to count Hearst's previously taken leave as FMLA leave.  Therefore, it reasoned, the FMLA provided no protection to Hearst after March 28, 2007.  The district court further concluded that Hearst's failure to notify PFT that he would be unable to return to work on May 1, 2007, violated PFT's leave-of-absence policy and provided PFT with an independent basis to fire Hearst.  Finally, the district court concluded that even if Hearst was entitled to FMLA leave until mid-June 2007, as he had argued, he was not prejudiced by the May 1, 2007, firing because he had failed to show that he would have been able to return to work before July 15, 2007, at the earliest.

The district court similarly rejected Hearst's retaliation claim, hypothesizing that even if Hearst could make out a *prima facie* case of retaliation, he had produced nothing suggesting that PFT's stated reason for the firing—Hearst's failure to comply with PFT's leave-of-absence policy requiring Hearst to notify PFT of changes to his return-to-work date—was pretext for retaliation.[2]

---

[2]Although Hearst requests us to "vacate the judgment and remand this case for trial," he does not assign as error this conclusion of the district court, nor does he argue, even in passing, that the district court's analysis of this claim was flawed.  We

Finally, the district court concluded that PFT had sufficiently demonstrated that Hearst was mailed notice of his termination of benefits in accordance with COBRA and that Hearst had failed to show any genuine dispute regarding that fact.

## II.

"We review a district court's grant of summary judgment de novo, considering all evidence in a light most favorable to the nonmoving party." Brandt v. Davis, 191 F.3d 887, 891 (8th Cir. 1999). "Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Id. "We may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court." Id.

The FMLA provides that, among other things, an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employee is "eligible" when he, again, among other things, has been employed "for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(i).

On this much the parties agree: When PFT granted Hearst leave for his medical condition on January 3, 2007, Hearst—who at that time had been a PFT employee for fewer than ten months—was not yet eligible for FMLA leave. Yet PFT mistakenly

---

therefore consider any arguments with respect to this claim to be waived. See Rotskoff v. Cooley, 438 F.3d 852, 854-55 (8th Cir. 2006).

told Hearst that he was eligible for FMLA leave. It also told Hearst that his requested leave would be counted against his FMLA-leave entitlement. As a result, on March 15, 2007—Hearst's one-year anniversary date and therefore the date on which he would ordinarily have become eligible for FMLA leave—Hearst had already been on leave (designated as FMLA leave by his employer) for more than ten weeks.

The question we are called upon to answer, then, is what to make of these ten weeks of leave prior to March 15, 2007. Hearst argues, as he did below, that because he was ineligible for FMLA leave prior to March 15, 2007, none of those weeks can be counted against his twelve-week FMLA entitlement. If Hearst is correct, then his FMLA entitlement ran twelve weeks from March 15, 2007, until mid-June, and therefore his firing on May 1, 2007, interfered with that entitlement.

PFT sees things differently. It argues that the ten weeks of leave prior to March 15, 2007, count toward Hearst's FMLA entitlement even though he was not eligible for FMLA leave during that period. If PFT is correct, then Hearst's FMLA entitlement ran twelve weeks from January 3, 2007, until late March, and therefore his firing on May 1, 2007, did not interfere with that entitlement.

While this may be a "unique question," Appellant's Br. at 7, we need not answer it today. Going beyond its ruling that Hearst's initial ten weeks of leave counted toward his FMLA entitlement, the district court further concluded that Hearst had failed to demonstrate that he had been prejudiced by the firing. In Ragsdale v. Wolverine World Wide, Inc., the Supreme Court invalidated a Department of Labor regulation on the ground that it "alter[ed] the FMLA's cause of action in a fundamental way: It relieve[d] employees of the burden of proving any real impairment of their rights and resulting prejudice." 535 U.S. 81, 90 (2002). Prejudice, the Court wrote, was a prerequisite to relief under the FMLA. Id. at 89; see 29 U.S.C. § 2617(a)(1)(A). And because the employee-plaintiff in Ragsdale had a "medical condition [which] rendered her unable to work for substantially longer than

the FMLA twelve-week period," she could not show that she had been prejudiced by her employer's failure to provide notice that it was counting part of her thirty weeks of leave as FMLA leave.  535 U.S. at 90.

Similarly, Hearst had a medical condition rendering him unable to work for substantially longer than the FMLA twelve-week period.  This conclusion holds whether we count twelve weeks from January 3, 2007 (taking us to late March), or instead count twelve weeks from March 15, 2007 (taking us to mid-June).  That is, even if we were to conclude, as Hearst urges, that his FMLA twelve-week period expired in mid-June 2007, Hearst would still need to show that he could have returned to work at that time.  This he has not done and, in light of his physician's May 15, 2007, and June 2007 revisions to his return-to-work date, could not do.  Therefore, Hearst failed to demonstrate any prejudice as a result of his firing on May 1, 2007, and the district court properly granted summary judgment to PFT on Hearst's interference claim.[3]

### III.

Hearst's remaining argument—that a factual dispute precluded summary judgment on his COBRA claim—also fails.  COBRA "requires the administrators of covered group health plans to notify terminated employees that they have the option of continuing their benefits after their employment ends."  Crotty v. Dakotacare

---

[3]At oral argument, for the first time in this appeal, Hearst's counsel argued that Hearst was prejudiced by the cancellation of his health insurance upon his firing because Hearst was then required to incur the cost of a surgery without the benefit of insurance.  Neither this, nor any other, argument regarding prejudice was made in Hearst's brief and we do not consider issues not first raised in a party's opening brief. Fair v. Norris, 480 F.3d 865, 869 (8th Cir. 2007).  In any event, Hearst's counsel later conceded that Hearst failed to develop any record on this point in the district court and, what's more, did not in fact have any surgery between the date of his firing and the date Hearst argues his FMLA-leave ended.

Admin. Servs., Inc., 455 F.3d 828, 829 (8th Cir. 2006); see 29 U.S.C. § 1166(a)(4)(A). "Although § 1166(a)(4)(A) does not specify what steps should be taken to notify the plan participant, we have said that a good faith attempt to comply with a reasonable interpretation of the statute is sufficient." Crotty, 455 F.3d at 830 (internal quotation marks omitted). Indeed, "the statute does not require proof of actual notice, so long as the administrator has sent the notice by means reasonably calculated to reach the recipient." Id.

Hearst and PFT agree that PFT bears the burden of proving that it "sent the notice by means reasonably calculated to reach the recipient." Id. In an effort to discharge that burden, PFT presented to the district court an affidavit from its third-party COBRA administrator explaining its usual method of providing notice to a terminated employee. The administrator further described how this usual method was used to provide notice to Hearst upon his termination, specifically, (1) that on April 30, 2007, it had "received notification of a qualifying event" regarding Hearst, (2) that on May 2, 2007, an "election notice addressed to Jason Hearst was generated, printed and placed in an envelope addressed to Mr. Hearst," and (3) that "the election notice was mailed to Jason Hearst on May 3, 2007," as indicated by the post office's stamp on the administrator's mailing manifest, which was applied after "the post office clerk verified that the envelope addressed to Mr. Hearst was in fact mailed and that the name and the address on the envelope matched the name and address on the manifest." Appellant's App. at 170. Copies of the letter and the manifest bearing the post office's stamp were attached to that affidavit. PFT thus produced evidence not only of its usual COBRA-notice practices, but also of its use of those practices to notice Hearst. Cf. Crotty, 455 F.3d at 831 ("In the cases that Dakotacare cites, the administrator presented some evidence tending to show that the notice in question was in fact mailed. . . . All of these cases involved evidence not only that the employer had a system for sending out the required notices, but also that the system was in fact followed with respect to the person in question.").

Hearst responds as he did below, pointing to affidavits from both himself and his wife in which they claim never to have received the notice. But claiming merely that the notice was never received did not, by itself, create a genuine dispute about any material issue of fact. The issue was not whether Hearst received the notice, but rather whether PFT "sent the notice by means reasonably calculated to reach the recipient." Crotty, 455 F.3d at 830. Therefore, to survive PFT's properly supported motion for summary judgment, Hearst needed to show—by use of "the pleadings, the discovery and disclosure materials on file, and any affidavits," Fed. R. Civ. P. 56(c)[4]—that a genuine factual dispute existed regarding the means used by PFT to send the notice. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)(2). Because he did not do so, and because the undisputed facts show that PFT used a notice method "reasonably calculated to reach" Hearst, the district court properly granted summary judgment to PFT on this claim.

IV.

The judgment is affirmed.

_____

[4]This was the formulation of Rule 56(c) at the time the district court granted summary judgment to PFT. Effective December 1, 2010, Rule 56(c) was amended to list explicitly some of the materials that may be used to support an "asserti[on] that a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1)(A). Those include: "depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials." Id.