NOT RECOMMENDED FOR PUBLICATION

File Name: 14a0093n.06

No. 13-1414

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Telitha L. Clements, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Feb 03, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Prudential Protective Services, LLC, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     MERRITT, SUTTON and STRANCH, Circuit Judges.

**MERRITT, Circuit Judge.**   The plaintiff, Telitha Clements, was a security guard for defendant Prudential Protective Services, LLC.  Defendant provides security guards for buildings in and around the Detroit area.  Plaintiff alleges violations of the Family and Medical Leave Act[1] in connection with her pregnancy leave.  She claims on appeal that the district court erred in granting summary judgment to defendant because genuine issues of material fact exist surrounding her failure to return to work after her leave.  The issues in part arise from the failure of defendant to give notice

---

[1]The Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., entitles eligible employees to 12 weeks per year of unpaid leave for various reasons, including the birth of a child.  The Act entitles an eligible employee who takes leave to be reinstated to the same or an equivalent position upon return from leave.  *Id.* § 2614(a)(1).

to its employees of the Act or their rights under the Act.[2]  Because we agree that genuine issues of material fact exist as to whether plaintiff was "laid off" during her leave, whether a similar job existed to which she could have returned at the end of her leave and, if so, whether she was aware of this fact, the award of summary judgment to defendant was in error and we remand to the district court for further proceedings.

**I.**

Plaintiff was hired as a security guard by defendant in October in 2006, and she worked at the New Center, Fisher and Kahn buildings in Detroit, Michigan.  She had been working as a guard at the New Center complex for many years under other employers prior to her employment with defendant.  During the entire time she worked at the New Center complex for various security companies, including defendant, her supervisor was Lamont Lively.  Lively scheduled employees

---

[2]The regulations under the Act require that the employer inform its employees of their rights under the Act:

   (c) Rights and responsibilities notice.

      (1) Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. . . .

   . . .

   (e) Consequences of failing to provide notice. Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered. *See* § 825.400(c).

29 C.F.R. § 825.300.

and had the authority to approve vacation requests. The record is in dispute as to whether Lively had the sole authority to hire or fire employees or to grant requests for leave or whether these requests needed to be cleared with defendant's main office.

Plaintiff became pregnant with her second child in 2008 and gave birth to him in June 2009. She gave notice of her pregnancy to Lively and her last day of work was May 23, 2009. As he had done with her first pregnancy in 2006, Lively told plaintiff to call him when she was ready to return to work and he would put her back on the schedule.[3] Lively testified that he informed plaintiff that she would need to contact the main office in order to properly schedule her maternity leave, Lively Dep. at 22, 34-35, 45, 60-61, but it is undisputed that neither Lively nor plaintiff ever contacted the main office regarding plaintiff's leave prior to the birth of her second child in June 2009. Clements Dep. at 27; Lively Dep. at 50. It appears from the record that no paperwork was filled out by either plaintiff or Lively relating to her time off from work and she was not paid during this time.

It is also undisputed that no employee of defendant ever talked with plaintiff about her rights under the Family and Medical Leave Act prior to her taking leave. Defendant did not provide its employees with information regarding the Act other than referring the employee to the text of the Family and Medical Leave Act if the employee inquired about it and the presence of a wall poster at certain locations where the guards sign in and out for their shifts. Keywell Dep. at 65-69.

---

[3]Although not directly at issue in this appeal, it is disputed whether Lively directed plaintiff to report to the main office and inform the company of her first pregnancy leave and whether she ever did so. In any event, when plaintiff was ready to come back to work after the birth of her first child, she called Lively, who did not give her back her previous job as a "command center operator" because there were no openings, but reassigned her as a security guard at the New Center at the same rate of pay as a command center operator, a higher-paying position than a security guard.

Plaintiff attempted to contact Lively in early July 2009, approximately six weeks after her leave began, to request that she be put back on the schedule. She was unable to reach Lively on several occasions because he was gone for a period of time due to the death of his mother. In his absence, plaintiff spoke to a woman named "Sabrina" who relayed messages between Lively and plaintiff. It is undisputed that Lively told Sabrina to tell plaintiff that the number of hours scheduled for security guards at the New Center complex had been cut due to lack of business and that he could not put plaintiff back on the schedule at the New Center complex at that time. Clements Dep. at 60-72, 117-18; Lively Dep. at 49. There is a dispute, however, as to whether Lively ever told plaintiff to report to defendant's main office to request an assignment to a different site. Lively testified that he did tell plaintiff, through Sabrina, to report to the main office, but plaintiff denies ever receiving such a message from Lively directly or from Sabrina. Clements Dep. at 71-72; Lively Dep. at 49.

Plaintiff visited defendant's main office on at least two occasions between July and September 2009 to receive paperwork from defendant that would allow her to receive unemployment benefits and to get verification that she was not working so that she could defer her credit card payments. Clements Dep. at 86, 116-18. At her visit on August 24, 2009, she received a lay-off letter from Danielle Todaro, an employee in defendant's main office, stating:

> To Whom It May Concern:
>
> Talitha [sic] Clements is currently laid off from Prudential Protective Services. She left on maternity leave on May 23rd. When a position becomes available she will be called back to work . . . .
>
> _____/s/____
> Danielle Todaro
> Human Resources

Defendant's Ex. F to Motion for Summary Judgment. At the visit to the main office on August 24, 2009, plaintiff also spoke with Matthew Keywell, defendant's vice-president of operations, who told plaintiff that she was not laid off because there were jobs available at other sites. During this encounter, plaintiff neither requested nor was offered a position by Keywell. Clements Dep. at 112. Defendant claims that plaintiff remains listed as an employee and that she can be assigned work if she makes a request. Defendant stopped authorizing plaintiff's unemployment benefits and credit card payment deferral after this meeting. Plaintiff continued calling Lively on a weekly basis until October 2009, but was not put back to work at the New Center complex. Clements Dep. at 67-72. Plaintiff filed a charge with the Equal Employment Opportunity Office in February 2010 and was issued a right-to-sue letter in May 2011. Plaintiff filed suit in July 2011, claiming violations of the Family and Medical Leave Act.

## II.

We review a grant of summary judgment de novo. *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 972 (6th Cir. 2012).

Plaintiff claims that defendant interfered with her rights under the Act because plaintiff was entitled "on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position." 29 U.S.C. § 2614(a)(1). To prevail on an interference claim, plaintiff must establish that: (1) she was an eligible employee; (2) defendant was an employer as defined in the Act; (3) she was entitled to leave under the Act; (4) she gave defendant notice of her intention to take leave; and (5) defendant

denied her Family and Medical Leave Act benefits to which she was entitled. *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

Defendant sought summary judgment on three grounds: (1) that plaintiff had failed to comply with the Family and Medical Leave Act notice requirements prior to taking leave; (2) plaintiff suffered no prejudice from any alleged violation by defendant of the Family and Medical Leave Act because plaintiff would have been laid off from her prior position even if she had not been on leave; and (3) plaintiff voluntarily failed to seek reassignment to a different job site despite having the knowledge and ability to do so. The record is confusing on these points concerning notice, prejudice and reassignment.

Defendant contends that plaintiff failed to follow defendant's "usual and customary" notice requirements for requesting leave because she failed to contact the main office prior to taking leave in late May 2009; but plaintiff contends that defendant had no "usual and customary" leave procedures. The district court found that a factual dispute exists as to defendant's compliance with the Act's notice requirements and as to plaintiff's compliance with any notice provisions. Specifically, it found that if, as plaintiff alleges, defendant failed to fulfill its own duties regarding notice to employees under the Act, it could not defeat plaintiff's claim under the Act by alleging that plaintiff did not follow procedures that did not exist. But, the district court then found that plaintiff did not establish that she suffered any prejudice as a result of any failure by defendant to provide notice procedures as required under the Act.

An employee must prove that the employer interfered with her exercise of Family and Medical Leave Act rights and caused prejudice thereby. *Ragsdale v. Wolverine World Wide, Inc.*,

535 U.S. 81, 89 (2002). Plaintiff was allowed, and did take, leave for the birth of her second child and the record supports the district court's ruling that plaintiff suffered no prejudice as it relates to her ability to take leave under the Family and Medical Leave Act. But the record is unclear and creates uncertainty about whether plaintiff suffered prejudice as to her right under the Act to return to her previous position or an equivalent position. Defendant's lack of internal procedures for employees preparing to take leave, those on leave and those seeking to return from leave are the source of the dispute in this case.

The record is also unsettled on the question of plaintiff's reassignment and why she was placed on "lay-off" status. Did the defendant in fact lay her off rather than reassign her to another security job? The district court acknowledged at the beginning of its opinion that there "is some dispute" as to whether Lively, the supervisor, instructed plaintiff to report to defendant's main office to request a new assignment at a different location. Op. at 4. The district court recognized that plaintiff knew that she could be reassigned to a different location. *Id.* at 5. It appears that plaintiff knew she *could* go to the main office to receive a new assignment, Clements Dep. at 116-18, but she did not think that she *must* go and receive a reassignment. Instead, plaintiff filed for unemployment and apparently wanted to wait for an opening at the New Center complex.

Plaintiff seems to have believed that she had the choice of receiving unemployment benefits or a reassignment with defendant to a different location. This choice is consistent with the approval of an employee of defendant, Danielle Todaro, who signed a letter on the company letterhead stating that plaintiff was "laid off." She did this so that plaintiff could provide proof to the government unemployment office that no suitable position for plaintiff existed at the company. This letter

indicates that defendant apparently approved, or at least allowed, plaintiff to file for unemployment benefits in early July 2009 after plaintiff was told there were no openings at the New Center complex. Defendant is responsible for its agent's conduct.

**III.**

These inconsistencies in defendant's interaction with the plaintiff and the lack of communication led to the confusion about plaintiff's status with the company. Even a cursory review of the record reveals that defendant had virtually nothing in the way of written policies and procedures for any aspect of its business. Matthew Keywell, vice-president of operations for defendant, described the hierarchy of the reporting system at the company as "kind of loose." Keywell Dep. at 11-12. Keywell's deposition testimony reflects that it was impossible to pin him down on explaining any direct chain of command or lines of communication at the company from the guard positions and site supervisors who were located in various buildings and parking lots across the metro Detroit area all the way up through to the "operations managers" who worked in the "main office" as it was called. Keywell Dep. at 11-15. No paperwork of any kind was prepared by Lively, Keywell or anyone in the main office when an employee went on "leave." Keywell testified that the procedure of instructing employees to inform the main office about leave is not written down anywhere, and there were no forms that an employee who wished to take leave would have filled out. Keywell Dep. at 28-29, 65.

In the letter signed by Danielle Todaro, Todaro represents that she is connected with "Human Resources" for defendant, that plaintiff is "laid off," and that "[w]hen a position becomes available [Clements] will be called back to work." Ex. F to Summary Judgment Motion. In her deposition,

Todaro said that she is an administrative assistant to Matthew Keywell, vice-president of operations for defendant, and that she mostly handles accounts payable and receivable, Todaro Dep. at 6, and that in 2009, during the period when plaintiff took her leave and the letter was written, she was a receptionist. Todaro Dep. at 7. In contrast to Todaro's representations on behalf of the company in the "lay off" letter, Keywell stated repeatedly that plaintiff was not laid off and that she could return to work whenever she wanted – just not to the New Center complex.

The record is full of inconsistent statements like this by defendant's employees, and it is unclear whether plaintiff was "laid off" or whether defendant wanted plaintiff to return to work at a location other than New Center. Keywell understates the situation when he explains in his deposition that the defendant's employment policies were "kind of loose." It seems that there were no policies. In light of this lack of clarity and the failure of defendant to give its employees notice of how to proceed upon completion of leave under the Act, we do not believe that summary judgment for defendant is appropriate.

We remand to the district court for further proceedings consistent with this opinion.