NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0350n.06

No. 07-2314

**FILED**

**May 20, 2009**

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ELEANOR LAFATA,

      Plaintiff-Appellant,

v.

CHURCH OF CHRIST HOME
FOR THE AGED,

      Defendant-Appellee.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    CLAY and COOK, Circuit Judges; OLIVER, District Judge.[*]

    **CLAY, Circuit Judge.**  Plaintiff Eleanor Lafata, a licensed practical nurse, appeals the district court's grant of summary judgment in favor of Defendant Church of Christ Home for the Aged. The district court granted summary judgment to Defendant on Plaintiff's claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101 *et seq.* Because we conclude that genuine issues of material fact remain with respect to both of Plaintiff's claims, we **REVERSE** the district court's grant of summary judgment and **REMAND** for trial on both of Plaintiff's claims.

_____

    [*]The Honorable Solomon J. Oliver, United States District Judge for the Northern District of Ohio, sitting by designation.

1

In February of 2000, Plaintiff began working as a licensed practical nurse at Defendant's assisted living facility. On November 25, 2000, Plaintiff injured her right shoulder while trying to lift a patient from the floor. Plaintiff was diagnosed with "adhesive capulitis right shoulder" (J.A. 305), and received written instructions from a physician advising her to avoid "repetitive lifting over 10 lbs." and "pushing and/or pulling over 5 lbs. of force" (J.A. 307). On April 5, 2002, Plaintiff received a promotion and became the Health Services Coordinator in Defendant's assisted living facility, which assigned her responsibility for supervising staff and interviewing prospective residents. Although Plaintiff's prior job as a staff nurse and her position as Health Services Coordinator required her to lift and pull significant weight, Defendant excluded lifting, pushing, and pulling activities from Plaintiff's job requirements to accommodate her shoulder injury.

On February 21, 2003, Plaintiff fell in her driveway at home and fractured her foot. After being placed in a cast, Plaintiff returned to work on March 7, 2003. However, within a few weeks, Plaintiff's doctors determined that her job duties were exacerbating her injuries, and recommended that she take additional leave from work. Accordingly, on March 31, 2003, Plaintiff presented a physician's note to Defendant indicating that she could "not put any pressure on [her foot] and [could ]not return to work until further notice. (J.A. 175.) In addition, Plaintiff requested forms related to both FMLA leave and disability leave from Debra Barber, Defendant's Human Resources Director. However, Plaintiff received only forms relevant to Defendant's disability leave policy. Plaintiff subsequently collected disability payments while on leave for her foot injury.

At the time she took leave, Plaintiff served as Health Services Coordinator. On May 16, 2003, Plaintiff received a letter from Defendant informing her that it had filled her position. The

2

letter prompted Plaintiff to file a complaint with the United States Department of Labor ("DOL") to determine whether Defendant could replace her while she remained on leave. After investigating Plaintiff's claim, the DOL found that Defendant failed to comply with applicable notice requirements under the FMLA and related regulations. The investigation also established that Defendant was unaware that the FMLA permitted it to count the time an employee takes under an employer's leave policies against the employee's twelve-week entitlement to leave under the FMLA.

Following the DOL's investigation, Defendant provided Plaintiff with twelve weeks of unpaid leave beginning July 28, 2003, and ending October 20, 2003. Defendant designated this leave as FMLA leave and, consistent with the requirements under the FMLA, agreed to provide Plaintiff with an "equivalent position . . . if and when she chooses to return." (J.A. 212.) In connection with the leave period, Plaintiff submitted a doctor's note to Defendant which cleared her to return to work on October 16, 2003.

On October 17, 2003, the last weekday before Plaintiff was scheduled to return to work, a conversation took place between Plaintiff and Barber. The conversation concerned Plaintiff's new job title and duties upon her anticipated return to work the following Monday, during which Defendant offered Plaintiff the position of Restorative License Nurse. Plaintiff claims that she informed Barber that she did not view the position as equivalent to her former role as Health Services Coordinator, and was also concerned because the job description required her to engage in physical activities, such as turning and positioning patients, which her shoulder injury prevented her from performing. According to Plaintiff, Barber ultimately told Plaintiff that the job was "what's being offered" and that Plaintiff could "take it or leave it." (J.A. 193.) In a letter dated October 21, 2003, Plaintiff wrote to Barber and stated that she was concerned that Barber had told her that she

3

was required to accept the Restorative Licensed Nurse position, or no position at all. In addition, Plaintiff offered in the letter to accept a non-supervisory nursing position that Defendant then was advertising in the local paper. Ultimately, Plaintiff did not return to work on October 20, 2003, the day her FMLA leave expired, a fact that Plaintiff does not dispute. On October 23, 2003, Defendant sent a letter to Plaintiff informing her that it considered her failure to return to work a "voluntary quit." (J.A. 317.)

Plaintiff filed a charge of discrimination with the EEOC on December 15, 2003, alleging violations of FMLA and the ADA. After receiving a right to sue letter, Plaintiff filed suit in the United States District Court for the Eastern District of Michigan. On September 29, 2006, the district court issued an order granting summary judgment to Defendant with respect to Plaintiff's FMLA claim. On September 28, 2007, the district court issued an order concluding that Defendant was entitled to summary judgment on Plaintiff's ADA claim. Plaintiff filed a timely notice of appeal of the district court's orders.

## DISCUSSION

### I. FMLA CLAIM

#### A. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). A district court's grant of summary judgment should be affirmed when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact" as to an essential element of the non-moving party's case. Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if a reasonable person could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After the moving

4

party has satisfied its burden, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Analysis

The FMLA protects employees who have worked for the same employer for at least one full year and who have provided at least 1250 hours of service within that period. *See* 29 U.S.C. § 2611(2)(A). Eligible employees are entitled to a total of twelve work weeks of unpaid leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D). The regulations implementing the FMLA impose numerous notice requirements on covered employers. For example, once an employer has determined that an employee's leave qualifies as FMLA leave, the employer has responsibility for designating leave as FMLA-qualifying leave, "and for giving notice of the designation to the employee." 29 C.F.R. § 825.300(d).

An eligible employee who takes leave pursuant to the FMLA "shall be entitled, on return from such leave, to be restored by the employer to the position of employment held by the employee when the leave commenced," *id.* § 2614(a)(1)(A), or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" *id.* § 2614(a)(1)(B). To qualify as an "equivalent position" under the FMLA, the employee's new position must be "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a).

5

Plaintiff claims that Defendant violated her FMLA rights when it failed to restore her to an "equivalent position" when she attempted to return to work in October of 2003. The district court granted summary judgment to Defendant, agreeing with Defendant that Plaintiff was not protected by the FMLA in October of 2003 because her twelve-week entitlement expired in June of 2003, twelve weeks after she first took disability leave. In granting summary judgment to Defendant, the district court relied on the Supreme Court's decision in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002). In *Ragsdale*, the employee took thirty weeks of leave, the maximum allowed under the employer's unpaid leave policy. *Id.* at 85-86. After the employee exhausted her leave and was terminated, the employee sued, arguing that she was entitled to twelve weeks of leave under the FMLA because her employer had failed to notify her that twelve of the thirty weeks would count against her FMLA entitlement. *Id.* at 86. The employee relied on a "penalty provision" in the FMLA regulations, which provided that, if an employee takes medical leave "and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." *Id.* at 85 (quoting 29 C.F.R. § 825.700(a) (2001)).

The Supreme Court invalided the "penalty provision" as beyond the power of the Secretary of Labor and inconsistent with the remedial nature of the FMLA. *Id.* at 85-86. The Court found that the penalty was "unconnected to any prejudice the employee might have suffered from the employer's lapse" in designating the leave as FMLA leave. *Id.* at 88. In addition, the Court concluded that the regulation "amends the FMLA's most fundamental substantive guarantee—the employee's entitlement to 'a total of 12 workweeks of leave during any 12-month period.'" *Id.* at 93 (quoting 29 U.S.C. § 2612(a)(1)). According to the Supreme Court, the effect of the regulation was to give "certain employees a right to more than 12 weeks of FMLA-compliant leave in a given

6

1-year period." *Id.* at 94. For these reasons, the Court invalidated the regulation and denied the employee's claim that the employer had violated her FMLA rights by failing to notify her that twelve weeks of her leave taken pursuant to the employer's unpaid leave policy would count toward her FMLA leave.

We conclude that the district court erred in relying on *Ragsdale* to grant summary judgment to Defendant. If Defendant had simply failed to designate Plaintiff's disability leave beginning in March of 2003 as FMLA leave, and Defendant terminated Plaintiff because she failed to return to work twelve weeks later, *Ragsdale* might compel the conclusion that, regardless of whether Defendant offered her an "equivalent position" upon her return, Plaintiff's FMLA rights were not violated. However, that is not what happened in this case.

In examining the specific facts surrounding Plaintiff's leave related to her foot injury, it is clear that Plaintiff was protected by the FMLA in October of 2003. At the outset of Plaintiff's leave for her foot injury, Defendant applied its individual leave policy, under which Defendant did not count leave taken pursuant to the alternative leave policy of providing one year of paid disability leave against the employee's FMLA entitlement. Accordingly, Defendant approved Plaintiff's leave beginning in March of 2003 solely under its paid disability leave policy, which did not require Defendant to restore Plaintiff to an "equivalent position" at any time during that leave or upon her return from disability leave.

Further, Defendant actively avoided designating Plaintiff's leave as FMLA leave. Despite Plaintiff's repeated requests for FMLA forms throughout April of 2003, Defendant refused to provide the required FMLA forms to Plaintiff for her disability leave. Defendant failed to notify Plaintiff of her rights and obligations with respect to FMLA leave. In addition, Defendant

7

affirmatively designated a later period—a twelve-week period ending October 20, 2003—as FMLA leave. Although Plaintiff ultimately received more than twelve weeks of leave, nothing in the statute or applicable regulations precludes an employer from providing an employee with more than twelve weeks of leave where only twelve weeks are categorized as FMLA leave; in fact, the FMLA encourages employers to do so. *See* 29 U.S.C. § 2653 ("Nothing in this Act or any amendment made by this Act shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act . . . .").

Plaintiff was thus entitled to the protections of the FMLA—including restoration to an "equivalent position" upon her return to work—during the period Defendant designated as FMLA leave. Consequently, on October 17, 2003, Plaintiff was within the twelve-week leave period granted by the FMLA, and therefore was entitled to the protections afforded by the FMLA, including restoration to her previous job as Health Services Coordinator, or an "equivalent position." *See* 29 U.S.C. § 2614(a)(1). Because there is a genuine issue of material fact as to whether the position of Restorative License Nurse constitutes an "equivalent position" within the meaning of the FMLA, we conclude that the district court's grant of summary judgment was improper.[1]

## II.  ADA CLAIM

### A.  Standard of Review

The district court also granted Defendant's motion for summary judgment with respect to Plaintiff's claim that Defendant failed to provide her with a reasonable accommodation for her

---

[1]Because we conclude that Plaintiff was protected by the FMLA, it is unnecessary to address her argument on appeal that she should be allowed to amend her complaint to include a claim of equitable estoppel.

8

shoulder injury. We review a district court's grant of summary judgment *de novo*. *Farhat*, 370 F.3d at 587.

## B. Analysis

The ADA bars employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Id.* § 12112(b)(5)(A). Plaintiff argues that Defendant violated the ADA by failing to provide her with reasonable accommodations for her shoulder injury.

> Under the ADA, "reasonable accommodation" includes:
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* § 12111(9). To determine the appropriate modification or adjustment necessary to accommodate the employee, the ADA's regulations indicate that "it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. §

9

1630.2(o)(3). While not set forth in the text of the ADA, this Court has held that "the interactive process is mandatory, and both parties have a duty to participate in good faith." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 556 (6th Cir. 2008). Accordingly, "[w]hen a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). Employers "who fail to engage in the interactive process in good faith[]face liability [under the ADA] if a reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *judgment vacated on other grounds*, 535 U.S. 391 (2002).

> In granting summary judgment to Defendant, the district court concluded as follows:

> Plaintiff's termination[, which the district court found to be consistent with the FMLA,] occurred on October 20, 2003, but she did not request consideration for one of the allegedly open positions at defendant's Assisted Living facility until her letter of October 21, 2003. Thus, at the time [Plaintiff] made her requested accommodation [of a transfer to a different position than that of Restorative License Nurse], she was no longer an employee, and [D]efendant had no duty to accommodate her disability at that time.

(J.A. 11.) However, as discussed above, Plaintiff remained protected by the FMLA through October 20, 2003, and therefore remained an "employee" for purposes of the ADA. Further, the district court's finding that Plaintiff did not inform Defendant of the need for an accommodation until October 21, 2003 is not supported by the record. Viewing the facts in the light most favorable to Plaintiff, Plaintiff informed Barber on October 17, 2003, while she was on FMLA leave, of her concerns that her shoulder injury would prevent her from performing certain of the required duties listed in the Restorative License Nurse job description. Accordingly, contrary to the district court's conclusion, Defendant was required to offer Plaintiff a reasonable accommodation for her shoulder

10

injury and to engage in the mandatory interactive process to determine the appropriate accommodation.[2]

In granting summary judgment to Defendant, the district court failed to recognize that a genuine issue of material fact exists as to whether Defendant participated in good faith in the mandatory interactive process. Viewing the evidence in the light most favorable to Plaintiff, Barber informed Plaintiff that she could "take [] or leave" the position of Restorative License Nurse without accommodations. By offering Plaintiff only one option with respect to the position despite knowing of her physical limitations, Defendant failed to discuss with Plaintiff the "potential reasonable accommodations that could overcome [her] limitations." *See* 29 C.F.R. § 1630.2(o)(3); *cf. Barnett*, 228 F.3d at 1116 (holding that an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process"). Based on this evidence, a reasonable jury could find that Defendant discriminated against Plaintiff

---

[2]The district court also granted summary judgment to Defendant on the basis that, even if Plaintiff remained an employee at the time she requested a reasonable accommodation in the form of a transfer to another position, she was unable to "point to a specific, identified position which was available at the time." (J.A. 60.) While the district court acknowledged that Plaintiff presented newspaper clippings advertising Defendant's nursing job openings in August 2003, the district court found that she failed to demonstrate that these positions remained available in October of 2003, at the time Plaintiff requested her accommodation. The district court further concluded that "the only evidence in the record reflects that no nursing positions were filled . . . , and that the assisted living facility was overstaffed." (*Id.*) Even if these positions were no longer available in October, the record establishes that Defendant offered Plaintiff the position of Restorative License Nurse, a job that Plaintiff was capable of performing with the requirements of lifting and pulling eliminated. The district court therefore erred in finding that Plaintiff failed to identify a position available at the time she sought to return to work.

by failing to provide Plaintiff with reasonable accommodations for her shoulder injury as required by the ADA.[3]

**CONCLUSION**

We therefore **REVERSE** the district court's grant of summary judgment on Plaintiff's FMLA and ADA claims and **REMAND** the case for a trial on both claims.

---

[3]As an alternative theory, Plaintiff claims that she is entitled to relief under the ADA because Defendant failed to reasonably accommodate her foot injury. This claim is unavailing, however, because Defendant quite extensively accommodated this injury by allowing Plaintiff to take twenty-nine weeks of leave.