**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARY KATE BREEDEN,            :
                                 :
        Plaintiff,         :
                                 :
   v.                    : Civil Action No. 08-0625 (JR)
                                 :
NOVARTIS PHARMACEUTICALS    :
CORPORATION,                :
                                 :
        Defendant.        :

## MEMORANDUM

A jury found in favor of plaintiff Mary Kate Breeden on her claim that her former employer, Novartis Pharmaceuticals Corporation, had illegally retaliated against her for taking Family and Medical Leave Act ("FMLA") leave. Novartis now moves under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law notwithstanding the verdict.[1] The motion will be granted.

The basic facts of this case are described in detail in my memorandum opinion granting in part and denying in part Novartis' summary judgment motion. See Breeden v. Novartis Pharm. Corp., 2010 U.S. Dist. LEXIS 13232, at *1-4 (D.D.C. Feb. 16, 2010). In short: Breeden was a salesperson in Novartis' transplant drugs unit. In early 2005 she took FMLA leave because she was pregnant. Around the same time (and after Novartis knew about Breeden's pregnancy and her plan to take leave), Novartis

---

[1] Novartis moves in the alternative for a new trial pursuant to Rule 59(a).

realigned its transplant sales force and assigned Breeden a smaller sales territory than she had had previously. Breeden complained about the change. One of her supervisors promised her that she would be "made whole" soon after her return from leave. No change was made to Breeden's sales territory, but over the next few years her merit-based income was greater than it had been before the realignment, and her "sales rank" among her peers improved. In 2008, a new management team carried out a new general realignment. Breeden's territory was merged with that of another salesperson. The merger rendered one of the two salespeople superfluous. Breeden, whose territory was the smaller of the two, was terminated.

This case differs from the typical discrimination case, in which an employee loses compensation or is fired and the salary reduction or the termination itself is the alleged adverse action. Here, the claimed unlawful acts were the 2005 sales territory realignment and Novartis' failure to restore Breeden's customers, but the termination –- the event for which a remedy is demanded –- did not occur until three years later, in 2008.

Under the FMLA, "[t]he employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief . . . ." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)

(quoting 29 U.S.C. § 2617(a)(1)(A)-(B)) (internal citations omitted).  The central question is therefore whether Breeden was terminated, and thus lost compensation, "by reason of" the 2005 realignment.  29 U.S.C. § 2617(a)(1)(A)(i)(I).  The three-year gap between alleged unlawful act and claimed injury seriously complicates that question.

In my summary judgment memorandum, I expressed concern about whether Breeden's evidence would be legally sufficient to meet the "by reason of" standard, but because the issue was not a focus of the parties' briefs, I withheld judgment until she presented her case-in-chief.  See Breeden, 2010 U.S. Dist. LEXIS 13232, at *12-13.  At trial, Novartis moved under Rule 50(a) for judgment as a matter of law on causation, but pursuant to Rule 50(b), I did not decide the issue, submitting the action to the jury "subject to the court's later deciding the legal issues raised by the motion."[2]

### Standard of Review

Courts "do not . . . lightly disturb a jury verdict." McGill v. Munoz, 203 F.3d 843, 845 (D.C. Cir. 2000).  Under the Federal Rules of Civil Procedure, a court may direct entry of judgment as a matter of law contrary to a jury verdict only if "a

---

[2] Novartis' post-trial motion also objects to my decision to give a "mixed motive" instruction and to the jury's (apparent) determination that Breeden did not fail to mitigate her damages, but I need not reach either issue.

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on th[e] issue [in question]." Fed. R. Civ. P. 50(a)(1). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). In reviewing the non-moving party's case, the question is not whether there is some evidence, but whether there is legally sufficient evidence. Siegel v. Mazda Motor Corp., 878 F.2d 435, 437 (D.C. Cir. 1989).

## Analysis

The phrase "by reason of" imposes a causation requirement upon recovery for lost compensation and benefits under the FMLA. The law knows multiple definitions of causation, however, and the exact meaning of "by reason of" in the FMLA has not been developed.

The two most familiar standards of causation, borrowed from tort law, are "factual" (or "but-for") cause, and "legal" (or "proximate") cause. Breeden did present evidence that the 2005 realignment was a but-for cause of her termination: she was terminated because her territory was the smaller of the two that Novartis merged; and, if she had not been given a smaller

territory in 2005, and if her supervisors had not failed to live up to the promise to improve her territory, she would not have been such a clear candidate for termination.

But-for causation without more, however, will not satisfy the FMLA's "by reason of" standard of proof. Although the question appears to be one of first impression in this circuit, a number of reasons strongly suggest that the FMLA's "by reason of" standard incorporates a proximate cause requirement. First, the words "by reason of" indicate that the adverse action must be the principal cause -- the reason -- for the loss of compensation. Second, "by reason of" has been interpreted to incorporate a proximate cause requirement in several other federal statutes. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-68 (1992) (RICO civil suits); Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 531-36 (1983) (Clayton Act § 4); Loeb v. Eastman Kodak Co., 183 F. 704, 709-10 (3rd Cir. 1910) (Sherman Act § 7); Rothstein v. UBS AG, 647 F. Supp. 2d 292, 295 (S.D.N.Y. 2009) (Anti-Terrorism Act); but see Boim v. Holy Land Found. for Relief & Development, 549 F.3d 689, 695-98 (7th Cir. 2008) (en banc) (adopting "relaxed" causation standard, based on policy considerations, for Anti-Terrorism Act). Congress, which passed the FMLA in 1993, see Pub. L. No. 103-3, 107 Stat. 6, is presumed to legislate with knowledge of pre-1993 case law and, by using the same words

again, to desire that the same interpretation be given. See, e.g., Holmes, 503 U.S. at 268. Finally, interpreting "by reason of" to incorporate a proximate cause requirement comports with the FMLA's stated purpose of balancing employees' interests in family and health leave against the legitimate interests of employers. See 29 U.S.C. § 2601(b)(1)-(3).

Proximate cause is subject to numerous definitions. Two approaches are most common: one asks from an *ex ante* perspective whether the harm was reasonably foreseeable by the wrongdoer at the time of the wrongful act; the other asks from an *ex post* perspective whether the harm was a direct result of the wrongful act. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts (5th ed. 1984) § 42, p.273; see also Fowler v. Harper et al., Harper, James and Gray on Torts (3d ed. 2007) §§ 20.5-20.6 (describing the foreseeability test as the most common view). Regardless of which approach is taken, the record of this case does not contain legally sufficient evidentiary basis for a reasonable jury to find that Novartis' 2005 realignment was the proximate cause of Breeden's termination in 2008. The best Breeden can do is argue without evidence (except, perhaps, for Breeden's own opinion) that the 2005 realignment rendered her termination "inevitable." It is true that she adduced evidence that her post-realignment territory had fewer customers, with fewer transplant operations, than her pre-

realignment territory, and Breeden testified that she was no longer busy throughout her workday after the 2005 realignment. But Breeden did not prove that the realignment rendered her services dispensable, or no longer economically valuable, nor did she show that anyone expected a reduction in sales force as a result of the 2005 realignment; the jury was left to reach its own conclusion about the "inevitability" of Breeden's termination, without legally sufficient evidence of proximate cause.

If the record establishes anything, indeed, it is that the 2005 and 2008 realignments were completely disconnected from one another. There is no evidence that those involved with the 2005 realignment -- primarily transplant unit head Brian O'Callaghan and the ZS Associates consulting firm -- actually anticipated Breeden's termination. Neither O'Callaghan nor ZS Associates had any involvement with the 2008 realignment. It was a new transplant unit head, Jesus Leal, and a different outside consulting firm, Powell & Associates, that reached the realignment decisions that resulted in Breeden's termination. That second realignment implemented a new business strategy, developed by new strategists. There is no evidence that the 2008 realignment was foreseeable from 2005 (ex ante), and because the 2008 realignment was a substantial intervening cause, Breeden's termination cannot be staid to have been the direct result (ex

post) of the 2005 realignment,[3] or of Novartis' failure to increase the size of Breeden's sales territory thereafter.

## Conclusion

Because Breeden adduced no legally sufficient evidence that she lost compensation or benefits "by reason of" the act and failure to act about which she complains, judgment as a matter of law must be entered for Novartis. An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge

---

[3] Breeden argues that she had the same direct supervisor throughout the time period at issue, Tom Harper, and that his constant presence undermines Novartis's argument that the shift in management team represents a substantial intervening cause. But Breeden has presented no evidence that Harper had any influence on the 2008 realignment or on the decision to terminate her.