## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANDREW J. LEONARD,
           Appellant,

       v.

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION,
           Agency.

DOCKET NUMBER
DA-0752-17-0354-I-1

DATE: January 26, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Andrew J. Leonard</u>, Grand Prairie, Texas, pro se.

<u>Anabia Hasan</u>, Washington, D.C., for the agency.

<u>Michael J. O'Brien</u>, New York, New York, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the agency's action suspending the appellant for 60 business days.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED regarding the standard of proof for an affirmative defense of retaliation for requesting an accommodation, we AFFIRM the initial decision.

## BACKGROUND

¶2      The appellant, a GS-12 Equal Opportunity Investigator, started his employment with the agency in June 2010 pursuant to a Schedule A appointment under 5 C.F.R. § 213.3102(u), which allows for the appointment of persons with severe physical, psychiatric, or intellectual disabilities. IAF, Tab 9 at 31, Tab 21 at 12. It is undisputed that the appellant has been diagnosed with bipolar disorder and is a qualified individual with a disability. IAF, Tab 9 at 61, Tab 20 at 4, Tab 21 at 15. In an effort to control his disorder, the appellant began electroconvulsive therapy (ECT) in December 2016. IAF, Tab 9 at 48. The appellant returned to his position on March 20, 2017. IAF, Tab 2 at 22.

¶3      On March 27, 2017, the agency issued the appellant a notice of proposed removal based on two specifications of a single charge of Improper Conduct. IAF, Tab 9 at 105-10. Specification 1 alleged that the appellant had been absent

without leave (AWOL) for a total of 480 hours since the pay period beginning December 25, 2016. *Id.* at 105. Specification 2 alleged that the appellant failed to follow appropriate procedures for requesting leave beginning October 18, 2016. *Id.* at 105-06. The appellant provided a detailed and lengthy response to the notice. *Id.* at 39-103. He attached two Standard Form 50s (SF-50s) approving his use of leave without pay (LWOP) from December 25, 2016, though March 19, 2017. *Id.* at 55-56. The deciding official upheld the charge, but mitigated the penalty to a 60-business-day suspension. *Id.* at 33-37. The suspension was effective May 15, 2017. *Id.* at 31.

¶4          The appellant appealed the agency's action. IAF, Tabs 1-2. Initially, he requested a hearing. *Id.* Subsequently, however, he asked that the Board decide this matter based on the parties' written submissions. IAF, Tab 11 at 3. The administrative judge issued an initial decision finding that the agency failed to prove both of the specifications underlying the charge. IAF, Tab 28, Initial Decision (ID) at 9-18. She also found that the appellant proved his allegations of disability discrimination and retaliation for having requested an accommodation. ID at 18-24.

¶5          The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant has responded in opposition. PFR File, Tab 3.

## ANALYSIS

The agency failed to prove that the appellant was AWOL.

¶6          Although the agency charged the appellant with improper conduct, the underlying specification of AWOL required that the agency prove the elements of that offense. *See Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1998) (finding that charges should be viewed in light of the accompanying specifications and circumstances). To prove an AWOL charge, an agency must demonstrate that the employee was absent without authorization and, if the employee requested leave, that the request was properly denied. *Savage v.*

*Department of the Army*, 122 M.S.P.R. 612, ¶ 28 n.5 (2015), *overruled in part by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 23-25. The agency has the burden of proving a charge by preponderant evidence. 5 C.F.R. § 1201.56(b)(1)(ii).

¶7        In its petition for review, the agency asserts that it did not approve LWOP for the appellant from December 25, 2016, through March 19, 2017. PFR File, Tab 1. In particular, the agency reiterates its contention that the appellant did not contact the agency after December 20, 2016, when he requested LWOP until December 23, 2016. *Id*. at 6. The agency asserts that, because the appellant did not contact the agency during his nearly 3-month absence, it properly charged him as AWOL during that time. In support of its assertion, the agency submits the appellant's time cards from December 25, 2016, through March 18, 2017, and argues that the time cards reflect that the appellant was placed in an AWOL status. *Id*. at 10; IAF, Tab 9 at 92-102. The agency also argues that the SF-50s showing that the appellant was on LWOP do not show that LWOP was approved. Rather, the agency argues that they were "placeholder[s] until disciplinary action was taken to address [the] [a]ppellant's extensive absenteeism." PFR File, Tab 1 at 10.

¶8        The agency's arguments on review fail to provide a basis for disturbing the administrative judge's finding that the agency approved the appellant's request for LWOP. ID at 11-12. The record reflects that the appellant notified the agency that he would need to be on extended leave due to his ECT treatments. As noted by the administrative judge, on December 19, 2016, the Disability Program Manager (DPM) sent an email to the appellant, the appellant's first-line supervisor, and the Deputy Director of the agency's Dallas District Office stating, among other things, that the appellant was currently out on LWOP contemplating further treatment due to his medical condition. ID at 6; IAF, Tab 2 at 51. The appellant's first-line supervisor sent the appellant a text message on December 20, 2016, asking if he anticipated coming in the remainder of the week,

and the appellant responded that he anticipated starting ECT treatments the following day and that his absence "could be up to six more weeks." IAF, Tab 22 at 147. Later that same day, the appellant notified the DPM that he would be starting his ECT treatments on December 21, 2016, and to please let him know if the agency needed anything from him. IAF, Tab 2 at 48. Even if the appellant's December 2016 messages could not be construed as requests for LWOP, as discussed below, the record reflects that the agency placed the appellant in an LWOP status from December 25, 2016, until March 19, 2017.

¶9 The agency's argument that the appellant was placed on AWOL during this time period is unpersuasive. The appellant's time cards reflect that he was initially placed in an LWOP status from December 25, 2016, until January 21, 2017. IAF, Tab 9 at 92-97. However, on February 2, 2017, the appellant's first-line supervisor sent an email requesting that the appellant's time cards for this period be coded as AWOL and that the appellant be placed in an AWOL status from January 22, 2017, until February 4, 2017. *Id*. at 112. The appellant's time cards reflect that the appellant was directly placed in an AWOL status from January 22, 2017, through February 18, 2017. *Id*. at 97-98, 112. However, they also reflect that he subsequently was placed in an LWOP status for at least part of the period between February 18, 2017, and March 18, 2017, and that his time cards during this period also were subsequently amended to reflect AWOL. *Id*. at 99-103.

¶10 As noted by the administrative judge, it is not unreasonable for an agency to temporarily carry an employee on LWOP and later change his status to AWOL when the employee failed to timely request LWOP, failed to notify the agency of his availability to work, and failed to return to work or submit medical evidence justifying his continued absence after the agency directed him to do so and warned him that his failure to do so could result in disciplinary action. ID at 11-12; *Johnson v. General Services Administration*, 46 M.S.P.R. 630, 634 (1991), *aff'd*, 944 F.2d 913 (Fed. Cir. 1991) (Table). Here, however, the

appellant informed the agency of his absence, IAF, Tab 2 at 48-51, and he subsequently returned to work and provided appropriate medical evidence, IAF, Tab 2 at 55. Further, the administrative judge properly noted that the agency did not initially place the appellant on AWOL, as it should have pursuant to agency policy if there was "any doubt" as to his leave request; instead, it placed him in an LWOP status. ID at 12; IAF, Tab 22 at 33. Thus, contrary to the agency's argument, the appellant's time cards do not establish that he was AWOL from December 25, 2016, through March 19, 2017.

¶11        Rather, we agree with the administrative judge that the two SF-50s showing that the appellant was in an LWOP status from December 25, 2016, until March 19, 2017, are entitled to significant weight. IAF, Tab 9 at 55-56; *see* ID at 12. The first SF-50, which was approved on February 10, 2017, indicates that the appellant was in an LWOP status from December 25, 2016, not to exceed February 4, 2017. IAF, Tab 9 at 56. Thus, LWOP was approved after the appellant's supervisor's February 2, 2017 email requesting that the appellant's time cards be coded as AWOL. *Id*. at 56, 112. The second SF-50, which was approved on April 5, 2017, indicates that the appellant was in an LWOP status from February 5, 2017, not to exceed March 19, 2017. *Id*. at 55. Thus, this LWOP also was approved following the appellant's time card entries for this period. While the agency argues that these SF-50s served as "placeholder[s] until disciplinary action was taken," as stated above, the agency could have placed the appellant directly in an AWOL status in accordance with agency policy. Based on the foregoing, we find that the agency failed to meet its burden to prove that the appellant was absent without authorization, *see Savage*, 122 M.S.P.R. 612, ¶ 28 n.5, and that it thus failed to prove the AWOL specification of the charge of Improper Conduct.[2]

---

[2] In its petition, the agency argues that the administrative judge misapplied the Family Medical Leave Act (FMLA). The agency argues, among other things, that the appellant did not work the 1,250 hours required for FMLA eligibility under 29 U.S.C.

¶12 Further, the agency has not provided a basis for disturbing the administrative judge's well-reasoned finding that, even if the agency had not approved the appellant's request for LWOP, it would be unreasonable to deny his request under the circumstances of this case. ID at 12-13; *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same). Thus, even if the agency had not approved LWOP for the relevant period, the administrative judge properly found that the agency failed to prove the AWOL specification because it did not establish that the leave request was properly denied. *See Savage*, 122 M.S.P.R. 612, ¶ 28 n.5

The agency failed to prove that the appellant failed to follow leave procedures.

¶13 Specification 2 of the Improper Conduct charge alleged that the appellant failed to follow appropriate procedures for requesting leave, requiring that the agency prove the elements of that offense. IAF, Tab 9 at 106-07; *see Otero*, 73 M.S.P.R. 198, 202. The proposal notice stated that, from October 18, 2016, onward, the appellant began informally requesting LWOP via text message. IAF, Tab 9 at 106-07. The agency alleged that that the appellant's LWOP request from October 18-26, 2016 was conditionally approved pending the receipt of appropriate medical documentation, but that the appellant did not provide medical

---

§ 2611(2)(A)(ii), and that the administrative judge's analysis is inconsistent with the Supreme Court's analysis in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002). We observe that 29 U.S.C. § 2611(2)(A)(ii) is an FMLA Title I provision, and that the 1,250-hour work requirement does not apply to Federal executive agencies like the Equal Employment Opportunity Commission, which are covered under FMLA Title II. *See generally* 5 U.S.C. §§ 6381-87. Likewise, *Ragsdale* was an FMLA Title I case, and its applicability to analogous issues in FMLA Title II is unclear. Nevertheless, we decline to reach the issue because regardless of whether the agency violated the FMLA, the administrative judge correctly found that the agency failed to prove its charge on other grounds.

documentation to support his absence during this period. *Id.* at 107. The agency also alleged that the appellant failed to provide medical certificates for his absence from December 24, 2016, to March 17, 2017, and failed to report for duty without providing notice to management officials. *Id.* The agency stated that, although the appellant provided medical documentation on March 22, 2017, following his return to work, this documentation only referenced the period of time between December 2, 2016, and March 17, 2017, and that the appellant failed to provide a justification for his failure to timely submit medical certificates "to support his excessive absenteeism beginning on October 18, 2016, through March 17, 2017." *Id.*

¶14       On petition for review, the agency asserts that the initial decision does not have any meaningful discussion of a part of specification 2, the allegation that the appellant did not follow appropriate procedures for requesting leave by failing to support his absences beginning October 18, 2016, with proper medical documentation. PFR File, Tab 1 at 11. The agency also alleges that the administrative judge erred in finding that the appellant properly requested leave regarding his absence from December 24, 2016, through March 17, 2017. *Id.* at 6-7, 10-12. The agency also argues that the appellant was on notice that he had to submit medical documentation to support his LWOP request prior to his return to work. *Id.* at 11-12. As discussed below, the agency's arguments do not provide a basis for review.

¶15       To sustain a charge of failure to follow leave procedures, an agency must show it gave proper instruction and the employee failed to follow it, without regard to whether the failure was intentional or unintentional. *See, e.g.*, *Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 555-57 (1996). The agency may discipline an employee for failure to follow leave procedures even if it eventually approves leave and/or LWOP for the absences covering the period of the charge of failure to request leave. *Wilkinson v. Department of the Air Force*, 68 M.S.P.R. 4, 6-7 (1995).

¶16     Here, the agency has failed to establish that the appellant was on notice of specific procedures for requesting and supporting an LWOP request. In its notice of proposed removal, the agency predicates its allegation of failure to follow leave procedures on provisions of the applicable collective bargaining agreement (CBA). IAF, Tab 9 at 107. While the agency's notice of proposed removal cites to CBA Section 27.03, that section pertains to annual leave. *Id*. at 15, 107. Moreover, the notice of proposed removal also cites to CBA Section 27.17, which relates to the Family Medical Leave Act. *Id*. at 19-20. CBA Section 27.29, which is not explicitly cited in the notice of proposed removal, states that LWOP is a temporary non-pay status requested by the employee and authorized at the discretion of the employer, but it does not define any procedures for requesting such leave. *Id*. at 25.

¶17     Moreover, the administrative judge found that the agency did not give the appellant clear and consistent instructions regarding whether he needed to provide medical documentation prior to his return to work and that the appellant acted consistently with guidance from his supervisor on prior occasions.[3] ID at 17. We agree with the administrative judge that the appellant's submission of medical documentation on March 22, 2017—following his return to work—was consistent with prior guidance from his supervisors. For example, in a September 12, 2016 email, the appellant's second-line supervisor approved the appellant's request for LWOP, contingent upon the appellant providing acceptable medical certification on the day of his return to duty. IAF, Tab 21 at 92. In addition, the appellant's request for LWOP for the period from October 18-26, 2016, was approved

---

[3] The administrative judge considered whether the appellant had failed to follow leave procedures as set forth by the agency. ID at 15. As noted, the agency predicated its specification of failure to follow leave procedures on the requirements of the CBA. However, the administrative judge's failure to cite to the CBA does not provide a basis for disturbing the initial decision because, as noted above, the CBA did not notify the appellant of any specific requirements for requesting LWOP. *See Panter*, 22 M.S.P.R. at 282 (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversing an initial decision).

contingent upon him providing acceptable medical certification within 15 to 30 days of his return to the office. IAF, Tab 22 at 149. Thus, the record reflects that, with respect to prior LWOP requests, the appellant's supervisors had allowed him to provide medical documentation supporting these requests following his return to work.

¶18 Nor did the appellant's supervisors notify him that he needed to submit medical documentation prior to his return to work to support his absence from December 24, 2016, until March 19, 2017. On December 2, 2016, the appellant requested LWOP, and continually requested LWOP for his absences through December 23. IAF, Tab 22 at 141-147. Apparently referencing his absences beginning on December 2, 2016, on December 19, 2016, his supervisor asked whether he had medical documentation to support his absence. *Id*. at 147. This request did not condition grant of LWOP on the appellant's providing acceptable medical certification prior to his return to work. In a December 20, 2016, text, the appellant informed his supervisor that he would be starting his ECT treatments the following day and anticipated being out up to 6 more weeks, and the appellant's supervisor did not notify the appellant that he needed to support his LWOP request by providing medical documentation prior to returning to work. *Id*. at 147.

¶19 Regarding the agency's argument that the appellant did not provide medical certificates supporting his October 16-26, 2016 absence, the administrative judge correctly found that the record shows that the appellant submitted medical documentation on October 25, 2016, and November 8, 2016. ID at 17; IAF, Tab 2 at 32-36, 47. The administrative judge found that the agency failed to establish that it informed the appellant that the documentation he submitted was insufficient or that he would face disciplinary action if he did not produce additional documentation. ID at 18. The agency has failed to provide a basis for disturbing these well-reasoned findings on review.

¶20     Based on the foregoing, we find that the administrative judge properly found that the agency failed to establish its specification of failure to follow leave-requesting procedures. Accordingly, the administrative judge correctly found that the agency did not establish its charge of Improper Conduct.

The administrative judge properly found that the appellant proved that the agency discriminated against him on the basis of disability.

¶21     As noted by the administrative judge, to establish disability discrimination based on failure to accommodate, an employee must show that: (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a qualified individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. ID at 19; *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014). A "qualified individual with a disability" is an individual with a disability who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). A request for LWOP for a specific period of time may be a reasonable accommodation depending on the particular circumstances in a given case. *See generally Equal Employment Opportunity Commission v. Journal Disposition Corp.*, No. 10–CV–886, 2011 WL 5118735, at *4-5 (W.D. Mich. Oct. 27, 2011).

¶22     Here, the administrative judge found it undisputed that the appellant is a qualified individual with a disability. ID at 19; IAF, Tab 20. The administrative judge also found that the agency failed to take steps to accommodate the appellant when it unilaterally revoked the appellant's LWOP—an accommodation it had already approved—and disciplined him for his absences. ID at 22.

¶23     On petition for review, the agency argues that the appellant never requested LWOP as an accommodation. PFR File, Tab 1 at 16. This contention fails to provide a basis for review because it constitutes mere disagreement with the

administrative judge's well-reasoned finding that the appellant contacted the agency's DPM on December 9, 2016, and requested leave as an accommodation for his medical condition. ID at 20; IAF, Tab 9 at 77. Moreover, the administrative judge found that, following the appellant's request for LWOP as an accommodation, the DPM told the appellant he was on LWOP, and the appellant was then issued SF-50s documenting the LWOP. ID at 21-22. Based on this sequence of events, the administrative judge properly found that the DPM approved LWOP as an accommodation for the appellant's disability. *Id.*

¶24 Accordingly, we discern no basis for disturbing the administrative judge's well-reasoned finding that the agency failed to provide the appellant with a reasonable accommodation. The administrative judge therefore properly found that the appellant proved by preponderant evidence that the agency's action was the result of discrimination based on disability.

The appellant proved his claim of retaliation for requesting an accommodation.

¶25 As to the appellant's claims of retaliation for engaging in activity protected by the Americans with Disabilities Act (ADA), the administrative judge analyzed the claim as an affirmative defense of EEO retaliation under 42 U.S.C. § 2000e-16. ID at 22; *see Savage*, 122 M.S.P.R. 612, ¶ 42. As explained below, the administrative judge applied an incorrect standard.

¶26 Separate from its prohibition on status-based disability discrimination, the ADA has an anti-retaliation provision, which prohibits discriminating against any individual "because such individual" has engaged in protected activity. 42 U.S.C. § 12203(a); *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 21 (2013). Both requesting a reasonable accommodation and complaining of disability discrimination are activities protected by the ADA. *Southerland*, 119 M.S.P.R. 566, ¶ 21. In *Pridgen*, 2022 MSPB 31, ¶¶ 44-47, the Board, relying on the guidance provided by the U.S. Supreme Court in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 351-53 (2013), found that the "but-for" standard is applicable to ADA retaliation claims, overruling the

Board's finding in *Southerland*. The Board also overruled the finding that an agency can avoid liability by proving by clear and convincing evidence that it would have taken the same action absent an improper motive, as such a construct would be applicable only for a motivating factor analysis. *Pridgen*, 2022 MSPB 31, ¶ 47. Thus, an appellant has the burden of proving "but-for" causation in the first instance in an ADA retaliation claim.

¶27 The administrative judge was not aware that the "but-for" causation standard applied to retaliation claims under the ADA as the Board's decision in *Pridgen* was issued after the initial decision. We, therefore, have applied the "but-for" causation standard to the facts of this case. Here, the administrative judge found that the agency's decision to approve the appellant's LWOP, then unilaterally revoke it, constituted retaliation under the ADA. ID at 23-24. Here, we agree with the administrative judge that the appellant engaged in protected activity by requesting LWOP as a reasonable accommodation. The EEOC has held that a request for reasonable accommodation is a form of protected EEO activity. *Keller v. U.S. Postal Servic*e, EEOC Appeal No. 01A03119, 2003 WL 2010852 (Apr. 25, 2003). The agency approved the accommodation, and then unilaterally revoked it and disciplined the appellant for his absences, without providing him any prior notice of its actions or informing him if it required additional documentation. ID at 23-24. We find that this constitutes sufficient evidence of pretext. Thus, we find the appellant proved by preponderant evidence that unlawful retaliation was a "but-for" cause of the disciplinary action. We note that although the agency asserted that the appellant's absences "negatively impacted Agency productivity by burdening his colleagues," IAF, Tab 22 at 22, the retaliation need not be the only reason for the action and may be one of several reasons, *see Bostock v. Clayton County*, 140 S.Ct. 1731, 1739 (2020).

**ORDER**

¶28    We ORDER the agency to cancel the appellant's suspension and to retroactively restore him effective May 15, 2017. *See Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶29    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶30    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](#)(b).

¶31    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. [5 C.F.R. § 1201.182](#)(a).

¶32    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[4]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]   The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    _____/s/ for_____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.